United States District Court
Middle District of Florida
Jacksonville Division

**WARD EDWARDS, INC.,**

 *Plaintiff,*

v.                       NO. 3:16-MC-60-J-32PDB

**THE DEVLIN GROUP, INC.,**

 *Defendant.*

# Order

Before the Court is a motion by Ward Edwards, Inc.—referred to in this order as "the plaintiff"—to initiate proceedings supplementary under Federal Rule of Civil Procedure 69[1] and section 56.29 of the Florida Statutes, to implead 40 people and entities who were not parties to the underlying federal action into the proceedings supplementary, and to freeze assets of one or more of the non-parties. *See* Docs. 78 (notice), 78-1 (motion), 78-2–78-26 (exhibits), 92 (reply).

Some but not all of those sought-to-be impleaded have responded in opposition to the motion. *See* Docs. 81 (response by 25 people and entities—referred to in this order as the "primary respondents"[2]), 86 (supplement to the response), 89 (response by St. Mark's Pond Property, LLC—referred to in this order as "SMPP"), 94 (sur-reply

---

[1]Federal Rule of Civil Procedure 69(a)(1) provides, "A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."

[2]The 25 persons or entities are Wallace R. Devlin, Jr., Micah S. Linton, and the 23 entities listed in footnote 1 of the order dated September 18, 2018, Doc. 76 at 1 n.1.

by the primary respondents). Unclear from the record is whether all of the 40 people or entities sought-to-be impleaded received notice of the motion.

## Background

The background of the matter is in the Court's order dated September 18, 2018, and, in the interest of judicial economy, is not fully repeated here. *See* Doc. 76.

Suffice it to say that, twelve years ago, in 2007, the plaintiff obtained a consent judgment for $340,361.63 plus post-judgment interest[3] against The Devlin Group, Inc.—referred to in this order as "the defendant"—in the United States District Court for the Southern District of Georgia in *Ward Edwards, Inc. v. The Devlin Group, Inc.*, 2:07-cv-66-LGW-RSB (S.D. Ga.), based on claims for unpaid professional services. *See* Doc. 1.

A month later, the plaintiff, through previous counsel, filed in this Court a "Certification of Judgment for Registration in Another District,"[4] and began discovery in aid of execution. *See Ward Edwards, Inc. v. The Devlin Group, Inc.,* No. 3:07-mc-53-J-33JRK (M.D. Fla.). The last entry on that docket is an order from more than a decade ago, entered in 2008, denying a motion to quash or modify a subpoena duces tecum and directing non-party Gatehouse Capital Corporation to comply with the subpoena. *See* Doc. 44 in No. 3:07-mc-53.

---

[3]Interest "shall be allowed on any money judgment in a civil case recovered in district court," which is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding … the date of the judgment." 28 U.S.C. § 1961(a).

[4]Under 28 U.S.C. § 1963, "[a] judgment in an action for the recovery of money or property entered in any … district court … may be registered by filing a certified copy of the judgment in any other district ... when the judgment has become final by appeal or expiration of the time for appeal[.]"

Three years later, in 2011, involuntary petitions for bankruptcy under chapter 7 were commenced against the defendant and another entity, Devlin Group Properties, LLC. *See In re The Devlin Group, Inc.*, No. 3:11-bk-1498-JAF (M.D. Fla. Bankr.); *In re Devlin Group Properties, LLC*, No. 3:11-bk-1499-JAF (M.D. Fla. Bankr.). In the bankruptcy case involving the defendant, the plaintiff was among dozens of people and entities listed by Wallace R. Devlin, Jr. (the defendant's "Director") in a schedule of creditors holding unsecured nonpriority claims. *See* Doc. 71 in 3:11-bk-1498. In 2013, the bankruptcy cases ended with orders dismissing the cases. *See* Doc. 78 in 3:11-bk-1498; Doc. 76 in 3:11-bk-1499.

Three years later, in late 2016 or early 2017, the plaintiff, through new counsel, sent subpoenas to 174 entities and 52 people on behalf of the United States District Court for the Southern District of Georgia, subsequently withdrew the subpoenas as improper, and separately filed in four divisions of this Court, including here, a "Certificate of Judgment for Registration in Another District." *See Ward Edwards, Inc. v. Devlin Group, Inc.*, 3:16-mc-60-J-32PDB (the current matter); *Ward Edwards, Inc. v. Devlin Group, Inc.*, 8:16-mc-146-T-35AAS; *Ward Edwards, Inc. v. Devlin Group, Inc.*, 6:17-mc-9-Orl-40KRS; *Ward Edwards, Inc. v. Devlin Group, Inc.*, 2:16-mc-30-FtM-UA-CM; *see also* Docs. 20, 20-1 in 2:07-cv-66 (S.D. Ga.).

Discovery proceeded only here. Following disputes and attempts at resolutions, in 2018, the Court denied the plaintiff's motion to compel discovery and granted in part a motion by 23 entities to quash subpoenas issued by the plaintiff. Doc. 76. The Court ordered those entities to respond to the plaintiff's subpoenas, as limited, and directed the parties to meet and confer about a deposition of Devlin. Doc. 76 at 24. He had agreed to sit not only for one deposition but also for a follow-up deposition after discovery of any evidence as a result of any testimony in the original deposition. Doc. 81 at 2.

The entities responded to the subpoenas by explaining they had reviewed their respective records and possessed no responsive documents. Doc. 78-1 at 11–12 (citing

3

Doc. 78-24). The plaintiff neither filed additional motions to compel nor deposed Devlin, and its counsel currently represents it still is "without a scintilla of knowledge as to the ultimate disposition of" most of the defendant's assets. Doc. 78-1 at 12.

**Motion and Responses**

Instead, earlier this year, the plaintiff filed the current motion (titled, "Plaintiff's Motion for Proceedings Supplementary and Impleader of Third Parties and Request for Preliminary Injunction") together with more than 450 pages of exhibits. Docs. 78, 78-1–78-26.

Based apparently on internet research, the plaintiff contends the defendant, Devlin, and Devlin's father created a "web of entities." Doc. 78-1 at 3. In the motion, the plaintiff seeks an order authorizing the commencement of proceedings supplementary under Rule 69 and section 56.29. Doc. 78-1 at 27. In the motion, the plaintiff seeks impleader of Devlin, four other people, and 35 entities because they assertedly "may be in possession of [the defendant's] assets."[5] Doc. 78-1 at 1–2, 27–28; Doc. 92 at 2 (quoted). In the motion, the plaintiff seeks permission to conduct "comprehensive" discovery into the businesses and financial interests of the 40 people and entities and to require them to "appear before this Court for an evidentiary hearing concerning the issue of fraudulent transfer and alter ego and satisfaction of the Consent Judgment." Doc. 78-1 at 28. And in the motion, although not in the "wherefore" clause, the plaintiff seeks "a freeze order preventing the further transfer of assets out of any account held by [the defendant] and alter egos and a freeze order prohibiting [Devlin] from transferring assets and any of equity in the impleaded parties." Doc. 78-1 at 26 (internal capitalization omitted).

---

[5]The four other people the plaintiff seeks to implead are Devlin's father (Wallace R. Devlin, Sr.), Edward McCue, Bruce Orlofsky, and Micah Linton. *See* Doc. 78-1 at 1–2. The 35 entities the plaintiff seeks to implead include the 26 persons and entities that have responded in opposition to the motion and other entities the plaintiff claims are part of the "web of entities." *See, e.g.*, Doc. 78-1 at 3.

4

The primary respondents contend the plaintiff has caused them to "incur substantial legal costs to limit the scope of the overbroad discovery requests and to respond to multiple court filings" by the plaintiff. Doc. 81 at 2. They complain that instead of proceeding with available discovery, such as Devlin's deposition, the plaintiff "aggressively" uses previously criticized tactics and "sweeping improper filings" under an already rejected legal theory. Doc. 81 at 2–3. They contend the plaintiff's provision of hundreds of pages of documents to 40 people and entities is "reprehensible," adding that the "use of this Court to make a document dump has further injured [them] and increased the cost of responding to these irresponsible and vexatious actions" of the plaintiff and its counsel. Doc. 81 at 3. They observe that the plaintiff "again makes allegations without any factual or legal support." Doc. 81 at 4. They argue the plaintiff's "unsubstantiated and ersatz assumptions should not be condoned nor permitted." Doc. 81 at 5. They contend:

> These current costs and pleadings could have been avoided if [the plaintiff] and its counsel had merely taken the under-oath deposition long before the case was closed in December 2018. Instead, [the plaintiff] again filed redundant pleadings that further demeans legitimate interests by asserting false claims. The filings demonstrate that leaving [the plaintiff] unrestrained, will continue to subvert the court process. The continued filings seem intended to force [the primary respondents] to pay moneys owed by a dissolved entity. [The plaintiff's] actions have been taken regardless of the costs to [the primary respondents] or the Court. This continued harassment and improper use of the judicial system is dilatory and vexatious.

Doc. 81 at 5.

The primary respondents observe the purpose of impleader is to summon into court non-parties who possess "specific identifiable property" and provide them due process. Doc. 81 at 5. They continue that the motion is a "callous and intentional misuse" of impleader insofar as the plaintiff seeks to use it to obtain damages against non-parties under a piercing-the-corporate-veil theory. Doc. 81 at 5. They argue the plaintiff fails to comply with section 56.29 because the plaintiff has not filed the affidavit required by section 56.29(1) and has not described the property it contends

5

should be applied to satisfy the judgment as required by section 56.29(2). They argue the plaintiff fails to satisfy its burden of showing preliminary injunctive relief is warranted. Doc. 81 at 7. They state:

> Although [the plaintiff's counsel] did not contact [the primary respondents'] counsel pursuant to Rule 3.01 (g) the local rules of the Middle District, the undersigned counsel certifies that he contacted [the plaintiff's] counsel last week by phone and by letter to discuss withdrawal of the Motion and request counsel to contact the service list persons or entities. [The primary respondents] requested [the plaintiff's] counsel to request the service list entities or person destroy all documents sent to them by [the plaintiff's] counsel. [The plaintiff's] counsel has not replied to either the message left or to the letter.

Doc. 81 at 7–8. They conclude, "If the Court deems appropriate, [they] request their reasonable legal fees, including paralegal fees." Doc. 81 at 8.

SMPP, through separate counsel, separately responds. Doc. 89. SMPP observes it is referenced only twice in the motion—once in the introductory paragraph listing the 40 persons and entities sought to be impleaded and once, improperly, as one of the "Orlo Devlin Entities." Doc. 89 at 1. SMPP contends that, contrary to the plaintiff's assertion, it "does not appear" that it filed an involuntary petition for bankruptcy against the defendant or another entity;[6] it does not appear that SMPP is mentioned in the exhibits on which the plaintiff relies; and, again contrary to the plaintiff's assertion, it does not appear that the plaintiff provided a subpoena to the "Orlo Devlin Entities." Doc. 89 at 2. SMPP represents it is not affiliated with the defendant or any of the other people or entities sought to be impleaded and explains that, in March 2018, the sole member of SMPP sold its membership interest and related rights in SMPP to Notre Dame Investors, Inc. Doc. 89 at 2–3. Like the primary

---

[6]The records of the bankruptcy cases against the defendant and Devlin Group Properties, LLC, indicate "Orlo St. Mark's Pond, LLC," not "St. Mark's Pond, LLC" was among petitioning creditors. *See* Doc. 1 in 3:11-bk-1498; Doc. 1 in 3:11-bk-1499.

6

respondents, SMPP argues the plaintiff fails to comply with section 56.29. Doc. 89 at 3. And like the primary respondents, SMPP states:

> [SMPP's] counsel was unsuccessful in contacting [the plaintiff's] counsel regarding this motion. The undersigned counsel certifies in good faith that multiple phone calls, a voice message and an email were sent to [the plaintiff's] counsel requesting additional information as to why [the plaintiff] has alleged [SMPP] is a proper party to this action. To date, [the plaintiff's] counsel has not returned the phone calls or otherwise replied to the message left or the email sent.

Doc. 89 at 3. SMPP concludes, "This Court should use its inherent powers to prevent continued abuse of the Court process and unsubstantiated filings. If the Court deems appropriate, [SMPP] request[s] reimbursement for [its] reasonable legal fees incurred in having counsel review and respond" to the motion. Doc. 89 at 3.

The plaintiff replies it has complied with section 56.29(1), pointing for the first time to a document filed on February 17, 2017, in the underlying case in the Southern District of Georgia and made an exhibit to a previous filing here. Doc. 90 at 1 (citing Doc. 9-14).[7] That document, signed under penalty of perjury by the plaintiff's counsel pursuant to 28 U.S.C. § 1746(2), is titled, "**AFFIRMATION OF DENISE L. SAVAGE, ESQ., PURSUANT TO 28 U.S.C. § 1746(2), IN SUPPORT OF SAVAGE LAW, PLLC, DENISE L. SAVAGE AND WARD EDWARDS, INC.'S OBJECTION TO WALLACE R. DEVLIN, JR. AND MICAH S. LINTON CONSOLIDATED OBJECTION, MOTION TO QUASH, FOR A PROTECTIVE ORDER, AND MOTION FOR ATTORNEY'S FEES AND SANCTIONS.**" Doc. 9-14. In the document, in arguing against the imposition of sanctions against her and the plaintiff, the plaintiff's counsel provides information about the consent judgment, including the unsatisfied amount; the asserted interest as of February 17, 2017; the issuing court and case number; and a Florida Judgment Lien Certificate. Doc. 9-14 at 2–3, 27–28. The plaintiff further replies: it does not seek to pierce the corporate

---

[7]Citations are to the original page numbers on the reply, not to the page numbers "stamped" through CM/ECF.

veil or assert a cause of action for fraudulent transfer; before impleading a non-party, the plaintiff need not specify property in possession of the non-party or make a prima facie showing the non-party holds assets subject to judgment; the plaintiff merely filed a motion to implead, not a motion for a notice to appear; and, contrary to the primary respondents' contention, the Court never ruled Devlin is not personally liable on the consent judgment. Doc. 90 at 1–3.

In their sur-reply, the primary respondents offer a concession that the 2017 document suffices as an affidavit required by section 56.29(1) but argue that concession "does not end the inquiry" because the motion seeks additional relief, including holding non-parties liable for the consent judgment. Doc. 94 at 1–2. They repeat that the plaintiff's "continued blatant, defaming and frivolous allegations against [them] has caused [them] to unnecessarily incur substantial legal costs." Doc. 94 at 2. They conclude that if the Court permits the plaintiff to proceed with proceedings supplementary under section 56.29, the Court should limit the plaintiff to only the action permitted by section 56.29(1), which does not permit the plaintiff to implead them or hold them responsible for the consent judgment.[8] Doc. 94 at 3.

**Law & Analysis**

There are several reasons why the motion must be denied at the outset.

The motion is 28 pages (excluding the signature block, excluding the accompanying notice, and disregarding that the motion is comprised of numerous single-spaced block quotes) and therefore exceeds the 25-page limit for motions under Local Rule 3.01(a). *See generally* Doc. 78-1. The motion contains no certificate under Local Rule 3.01(g) despite that the plaintiff's counsel and the primary respondents'

---

[8]Based on the litigation tactics of the plaintiff to date, the primary respondents ask the Court to limit the scope of any deposition of Devlin. Doc. 94 at 2. To the extent the plaintiff has not yet sought a deposition of him, the request is premature. Should the plaintiff seek to depose him, he may file a pre-deposition motion that complies with Local Rule 3.01 and describes the specific limitations he seeks.

8

counsel have been in communication about this matter for years.[9] The plaintiff's counsel apparently failed to return communications from both the primary respondents' counsel and SMPP's counsel. Doc. 81 at 7–8; Doc. 89 at 3. In the motion, the plaintiff again purports to cite "South Carolina Title XXXVI, Chapter 607, Section 1421" but then block quotes portions of the Florida Statutes. Doc. 78-1 at 17–18; *see* Doc. 76 at 9 n.17 (previously pointing out same error). In the motion, the plaintiff repeatedly uses the term, "Defendant"—which is only The Devlin Group, Inc.—to refer to numerous non-parties. *See, e.g.,* Doc. 78-1 at 11–12. In the motion, the plaintiff provides no record citation for the assertion that Devlin is an officer of the defendant (as opposed to a registered agent or director) or for assertions such as, "The Defendant, Devlin, and all Devlin and Rimrock Entities *failed* to produce a single document to the Production Demands and Subpoenas served and pursuant to a Court order entered by this Court, the bankruptcy court in the Middle District of Florida and the District Court for the Southern District of Georgia."[10] Doc. 78-1 at 13

---

[9]While a Local Rule 3.01(g) certificate is not required for injunctive relief, the motion seeks relief beyond anything that can be considered injunctive relief. *See generally* Doc. 78-1.

"**Counsel must respond promptly to inquiries and communication from opposing counsel**. Many potential discovery disputes are resolved (or the differences narrowed or clarified) when counsel confer in good faith. Rule 3.01(g) is strictly enforced. A motion that does not comply with the rule may be summarily denied." M.D. Fla. Discovery Handbook § I.A.2 (emphasis added).

"The district's attorneys and the Court are justifiably proud of the courteous practice that is traditional in the Middle District." *Id.* § I.A.1.

[10]In the interest of judicial economy, the undersigned has not combed the dockets in the three cases in the other courts, but a cursory review of them suggests the plaintiff's assertion is false.

In the bankruptcy cases, on requests for status conferences, the bankruptcy court ordered the defendant, through Devlin as the director, and Devlin Group Properties, LLC, also through Devlin as the registered agent, to file schedules and statements of financial affairs by a particular date. *See* Doc. 46 in No. 3:11-bk-1498, Doc. 45 in No. 3:11-bk-1499. Following a motion for contempt in each case, the bankruptcy court set a hearing to consider whether Devlin should be held in contempt for failing to file schedules and statements of financial affairs as ordered. *See* Doc. 68 in 3:11-bk-1498; Doc. 67 in 3:11-bk-1499. In both cases, schedules and statements of

(emphasis in the original). In the motion, the plaintiff relies on caselaw based on a previous version of section 56.29(2), which since has been materially revised, without any acknowledgment that the caselaw presented is stale.[11] In the motion, the plaintiff expressly requests an order authorizing it to file "a complaint against said Requested Impleading Parties for purposes of pursuing alter ego and fraudulent conveyance claims against them," Doc. 78-1 at 28, but in the reply expressly disclaims having had any intent to "seek to pierce the corporate veil, or assert a claim for fraudulent transfer" in the motion,[12] Doc. 92 at 2. The plaintiff titles the motion as one for a

---

financial affairs were filed, and no contempt finding was made. *See* Docs. 68, 71 in 3:11-bk-1498; Docs. 67, 70 in 3:11-bk-1499.

In the Southern District of Georgia, the underlying case was resolved quickly (in less than six months) with no discovery disputes of record, and the only substantive post-judgment order was against the plaintiff, directing it to pay attorney's fees and expenses for causing the issuance of improper subpoenas. *See generally* docket and Doc. 35 in 2:07-cv-66.

By presenting the motion to the Court, the plaintiff's counsel certify that, to the best of their knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, the factual contentions have evidentiary support. *See* Fed. R. Civ. P. 11(b)(3).

[11]The plaintiff contends it "need not specify certain property in an affidavit in the possession of a proposed impleaded party" and it "is not required to make a prima facie showing that the third party holds assets subject to a judgment prior to impleading a party." Doc. 92 at 23 (citing *Tara Prods. Inc. v. Hollywood Gadgets, Inc.*, No. 09-61436-CIV, 2012 WL 1367574, at *1 (S.D. Fla. Apr. 19, 2012) (unpublished)). This argument relies on caselaw pre-dating a material revision to section 56.29(2). Post-revision cases, such as *Longo v. Associated Limousine Services, Inc.* 236 So. 3d 1115 (Fla. 4th DCA 2018), and *KHI Liquidation Trust v. S & T Painting*, No. 8:17-mc-133-T-35JSS, 2018 WL 1183377 (M.D. Fla. Mar. 7, 2018) (unpublished), which the plaintiff cites elsewhere, *see* Doc. 78-1 at 24; Doc. 92 at 2, and the statute itself make clear a court cannot bring non-parties into proceedings supplementary or issue a notice to appear until the judgment creditor adequately describes the property, debt, or obligation. *See Longo*, 236 So. 3d at 1119–20 (affirming denial of motion to bring non-parties into proceedings supplementary where judgment creditor failed to describe property, debt, or obligation); *KHI*, 2018 WL 1183377, at *2–3 (denying motion to implead non-party where judgment creditor failed to describe property).

[12]A district court has ancillary jurisdiction over a proceeding supplementary seeking to disgorge a fraudulently transferred asset but not to impose liability for a judgment on a third party (for which original jurisdiction would be required). *Nat'l*

"preliminary injunction" and requests a preliminary injunction in the opening paragraph (causing the Court to prioritize review of the motion over earlier-filed motions seeking less immediate relief) but then fails to cite Federal Rule of Civil Procedure 65(a), fails to cite Local Rules 4.05(b)(1)–(5) and 4.06, fails to explain why those rules would not apply, and fails to provide any analysis on requirements for obtaining a preliminary injunction under state or federal law.[13] *See generally* Docs. 78-1, 92.

The plaintiff appears to have a legitimate complaint that it has been unable to collect anything on the consent judgment entered more than a decade ago and has been continuously frustrated in its collection efforts by the dissolution of the defendant, possibly by the defendant's bankruptcy proceedings, by the absence of clarity on where any of the defendant's assets went before or after its dissolution, and by the many diverse business dealings by its director, Devlin. According to the plaintiff's counsel, the plaintiff is a small company. Doc. 78-1 at 12. But nothing justifies proceeding in a manner that multiplies the complexity of an already complex matter and wastes time of counsel, non-parties, and the Court.

Even if the Court were to disregard those problems with the motion, there is a fundamental reason why the motion fails.

---

*Maritime Servs., Inc. v. Straub*, 776 F.3d 783, 786-88 (11th Cir. 2015); *see also Foster v. Nations Funding Source, Inc.*, 648 F. App'x 850, 852 (11th Cir. 2016); *Am. Home Assurance Co. v. Weaver Aggregate Transp., Inc.*, No. 5:10-CV-329-OC-32PRL, 2018 WL 829126, at *2 (M.D. Fla. Feb. 12, 2018) (unpublished).

[13]These problems are consistent with other filings by the plaintiff, discussed in the order entered on June 14, 2019. Doc. 91. The order warned that continued failure to follow a court order or court rule may result in an order to show cause. Doc. 91 at 7. That warning succeeded the current motion.

According to the motion, as substantially narrowed by the reply, the plaintiff seeks to commence proceedings supplementary under section 56.29(1), which provides:

> (1) When any judgment creditor holds an unsatisfied judgment or judgment lien obtained under chapter 55, the judgment creditor may file a motion and an affidavit so stating, identifying, if applicable, the issuing court, the case number, and the unsatisfied amount of the judgment or judgment lien, including accrued costs and interest, and stating that the execution is valid and outstanding, and thereupon the judgment creditor is entitled to these proceedings supplementary to execution.

Fla. Stat. § 56.29(1). If a judgment creditor files the required motion and affidavit, a court must grant a motion for proceedings supplementary. *Biloxi Casino Corp. v. Wolf*, 900 So. 2d 734, 734 (Fla. 4th DCA 2005).

The plaintiff has failed to file the affidavit required to commence proceedings supplementary under section 56.29(1)—that is, an affidavit "identifying, if applicable, the issuing court, the case number, and the unsatisfied amount of the judgment or judgment lien, including accrued costs and interest, and stating that the execution is valid and outstanding." Fla. Stat. § 56.29(1).[14] Among the more than 450 pages included with the motion, the plaintiff includes no affidavit.[15] *See generally* Docs. 78, 78-1–78-26.

The plaintiff argues it complied with the statutory affidavit requirement through the verified opposition brief submitted more than two years ago in the underlying case in the United States District Court for the Southern District of

---

[14]While the primary respondents offer the concession that the plaintiff complied with section 56.29(1), Doc. 94 at 1, SMPP makes no such concession, *see generally* Doc. 89 at 3. Without a concession by all, and because the matter involves an issue of law and fact, the Court is not bound by the concession.

[15]The plaintiff includes some required information in the motion itself, Doc. 78-1 at 2, but does not contend—nor could it plausibly contend—the unsworn statements qualify as an affidavit.

Georgia for the purpose of avoiding sanctions in that court. *See* Doc. 92 at 2 (citing Doc. 9-14 at 2–3, 27–28). The plaintiff did not point to the 2017 brief in its motion or otherwise acknowledge the affidavit requirement, instead focusing on relief it later— in its reply—disclaimed to be seeking. *Compare generally* Doc. 78-1 *with* Doc. 92. The plaintiff's reliance on the brief came only in its reply, *see* Doc. 92 at 2, and only after the primary respondents explained the absence of an affidavit in their response, *see* Doc. 81 at 7.

By its plain language, which the Court is dutybound to apply, section 56.29(1) requires an affidavit with the motion. This requirement is for the seeming purpose of requiring proof—under threat of perjury sanction—of a currently outstanding judgment before opening the door to a process that allows persons to be haled into court and face the possible relinquishment of properties held by them. The requirement serves the ends of due process and is not trivial. The plaintiff cites no authority that would allow a judgment creditor to satisfy the requirement through an affirmation presented for another reason more than two years ago—whether here or elsewhere—or through mere inferences drawn from pieces of the record.

Moreover, the verified opposition brief does not contain the information that is supposed to be in the affidavit. The affirmation does not state that the consent judgment is "valid and outstanding" and in any event describes the facts as they existed on February 17, 2017. *See* Doc. 9-14 at 2–3. Through its use of the present tense ("the execution **is** valid and outstanding"), the statute requires the affidavit to include facts existing when the motion is filed.

Because the plaintiff failed to submit an affidavit required by section 56.29(1), the Court **denies** the plaintiff's motion, Doc. 78-1.

In light of the problems with the motion detailed above and the representations in the responses by the primary respondents and especially by SMPP, by **December 6, 2019**, the plaintiff's primary and local counsel must show cause why they should

13

not be ordered to pay some or all of the attorney's fees of the primary respondents and SMPP.[16]

In light of the reply, Doc. 90, the current motion is deemed to not seek discovery under section 56.30, the issuance of a notice to appear under section 56.29(2), or any relief under section 56.29(6). Nor would any of that relief be available without getting past the initial step of providing the affidavit required by section 56.29(1) and conducting reasonable discovery, like a deposition of Devlin. In light of the plaintiff's representation that it is "without a scintilla of knowledge as to the ultimate disposition of" most of the defendant's assets, Doc. 78-1 at 12, it is unclear on the current record how an affidavit under section 56.29(2), which requires a description of non-exempt property that may be applied toward the judgment, could pass muster under Federal Rule of Civil Procedure 11.

**Ordered** in Jacksonville, Florida, on November 13, 2019.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:  Counsel of record

---

[16]The sources for sanctions against a lawyer appearing before a federal district court are 28 U.S.C. § 1927, Rule 11, and the court's inherent authority.